# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| CHERYL ANN JENNINGS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C10-1843-TSZ-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Cheryl Ann Jennings filed a pro se appeal[1] challenging the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed.

---

[1] Her brief is a one-page submission. *See* Dkt 13. After receipt, the Court sent a minute order noting that plaintiff was represented by counsel at her administrative hearing by D. Suzan Tucker with the Tucker & Boklage law firm, who also represented her in a Request for Review at the Appeals Council stage. The Court advised plaintiff that the appeal involved important legal rights, and that there were attorneys who represented clients in Social Security appeals on a contingent fee basis, and that if she wished additional time to find counsel she should so advise the Court. *See* Dkt. 17. She did not, and the case is now ripe for consideration.

REPORT AND RECOMMENDATION - 1

# I. FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a 53 year-old woman with a high school education. Administrative Record ("AR") at 25-26. Her past work experience includes employment as a pump assembler. AR at 26-27 Plaintiff was last gainfully employed in 2004. AR at 26.

On October 17, 2006, plaintiff filed a claim for DIB, alleging an onset date of August 1, 2004. AR at 10. Plaintiff asserts that she is disabled due to degenerative disc disease of the lumbar and thoracic spine with a cyst affecting lumbar spine, a depressive disorder, and a history of alcoholism and drug abuse. AR at 12.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 10. Plaintiff requested a hearing which took place on October 22, 2009. AR at 22-54. On November 16, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform her past relevant work as a small products assembler. AR at 10-17. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

# II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

# III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.  EVALUATING DISABILITY

As the claimant, Ms. Jennings bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On November 16, 2009, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2008.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2004 through her date last insured of March 31, 2008.

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar and thoracic spine with a cyst affecting lumbar spine, a depressive disorder, and a history of alcoholism and drug abuse.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). She could lift and carry 50 pounds occasionally and 25 pounds frequently. She could stand and walk about 6 hours out of an 8-hour date and sit about 6 hours out of an 8-hour day. She could do simple and detailed tasks and have superficial contact with the public and co-employees.

6. Through the date last insured, the claimant was capable of performing past relevant work as a small products assembler. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2004, the alleged onset date, through March 31, 2008, the date last insured.

AR at 12-17.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ properly evaluate the medical evidence regarding plaintiff's mental impairments?

2. Did the ALJ err by concluding that plaintiff could perform certain daily tasks, which were in reality beyond her abilities, but were completed only by virtue of violence or threats of violence?

Dkt. 13 at 1.

## VII. DISCUSSION

Because plaintiff is representing herself, additional care was expended searching for possible error by the ALJ. There are none. The plaintiff's first argument is that the ALJ erred in her assessment of plaintiff's mental impairments, and that they are more disabling than the ALJ determined. The ALJ found plaintiff suffers the severe mental impairments of depressive disorder, undoubtedly exacerbated by a history of alcoholism and drug abuse. The determination of whether the ALJ erred requires the Court to determine if there is substantial evidence, as that term is defined above, to support the ALJ's findings.

*1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining

physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. *As Applied*

The ALJ discussed all of plaintiff's medical records. The only issue that could be interpreted as being in violation of the standard described above relates to the ALJ's discounting some of the opinions of Dr. Humann and Mr. Woolpert who treated plaintiff. As noted above, treating physicians opinions are to be accorded the most weight in the medical review process, which required that the ALJ provide "specific and legitimate" reasons for doing so. The ALJ did.

The ALJ noted that the ultimate assessments were not consistent with the treatment record, and not consistent with plaintiff's daily actions, each of which would constitute a "specific and legitimate" reason to discount the opinions. As the ALJ recounted:

> Treatment records of Mr. Woolpert and the doctor reflect good control of symptoms with medication and treatment. In July 2007 the claimant reported feeling better after counseling sessions. In November 2007 she reported her mood was the best it had been in years. In August 2008 she reported feeling well with no medication side effects. Moreover, around April 2008, Dr. Humann referred to claimant having a GAF of 55. This contrasts with the lesser GAF referred to in Exhibit 15F and there is no explanation in the record for why claimant's functioning would have changed.

> The opinions of Dr. Humann and Mr. Woolpert in Exhibits 17F and 22F are also inconsistent with the claimant's active lifestyle. The claimant took care of her husband when he was ill, did household chores and yard work, traveled to California a few times as well as to Seattle, sewed, participated in model horse shows, helped her husband hunt, tanned hides, loaded wood, drove, took care of a horse and cats, and filled oil lamps in her cabin. The GAF assessment of 60 provided by Dr. Lyon is more consistent with the claimant's daily activities and the record as a whole. He was more objective in evaluating the claimant's condition and he is entitled to more weight.

AR at 16-17.

As noted above, it is the responsibility of the ALJ to resolve ambiguities in the medical evidence. The role of this Court is limited. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. It is theoretically possible to interpret the evidence in the manner suggested by plaintiff. However, it is not possible to conclude that plaintiff's interpretation is the only

REPORT AND RECOMMENDATION - 8

rational interpretation of the evidence. The ALJ did not err in her assessment of plaintiff's mental impairments or the associated RFC.

        *3.     The ALJ Did Not Err in the Assessment of Plaintiff's Daily Activities*

Plaintiff's second argument is that the ALJ erred by finding she could do some of the daily activities specified, because they were really beyond her abilities and that she would be beaten if she did not do as she was told. There does not appear to be any support for this in the record, beyond a statement at her hearing, in which the following testimony was given:

> Q: And you were sweeping and filling oil lamps?
>
> A: Yes. That was the hard part. The kerosene jugs weren't exactly light, but he expected me to do it anyway.
>
> Q: What did they weigh?
>
> A: Well, we had four gallons and then we got – let's see, 30 or 40 pounds, I guess if they were almost full, 8 pounds a gallon for water, so it's – I didn't want to, but he'd just yell and scream if I didn't, so I didn't have a choice. It was either fight or do it.

AR at 42.

There are two problems with plaintiff's argument. First, this does not detract from the numerous other daily activities that plaintiff performed and was able to perform. There is no even moderate suggestion that these activities were undertaken unwillingly. Second, this testimony does not undercut the ALJ's point that plaintiff was, in fact, able to do this type of work on a daily basis, whether she did so voluntarily or not. The ALJ did not err is her report of plaintiff's regular and daily activities, and the corollary that the ability to perform these activities is inconsistent with the level of disability claimed by plaintiff.

//

//

//

REPORT AND RECOMMENDATION - 9

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed and that this case be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 7th day of September, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10